UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

KERRY D. MILLER,

       Plaintiff,

v.                                                    Case No.  2:14-cv-00045
                                                           HON. ROBERT HOLMES BELL

AMY WESTCOMB, et al.,

       Defendants.

_____/

REPORT AND RECOMMENDATION

       Plaintiff Kerry Miller filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Amy Westcomb, Physician Assistant, and John Kimsel, Health Unit Manager. Plaintiff is currently incarcerated at the Bellamy Creek Correctional Facility.  Plaintiff argues that he was denied medical treatment for his alleged urinary and bowel incontinence while incarcerated at multiple facilities between 2012 and 2014. The court previously dismissed all of Plaintiff's claims based on his failure to exhaust administrative remedies, with the exception of one claim against Defendant Westcomb for allegedly denying Plaintiff incontinence supplies on October 23, 2012, and one claim against Defendant Kimsel for allegedly preventing Plaintiff from obtaining catheters, lubricant, and incontinence garments. Plaintiff alleges Eighth Amendment and state law violations against Defendant Westcomb based on medical treatment.  Plaintiff alleges Eighth Amendment violations against Defendant Kimsel.

       Plaintiff alleges that he suffers from a neurogenic bladder and bowels, which cause him to soil himself daily. Plaintiff alleges that he was examined by a urologist in 2009, who

determined that he would require intermittent self-catheterization for the rest of his life. Plaintiff claims that he started receiving medical supplies for his condition in January 2010. Plaintiff claims that on October 23, 2012, after his transfer to Alger Correctional Facility, he saw Defendant Westcomb but was not properly examined even though he urinated in his pants during the visit. Plaintiff claims that Defendant Westcomb incorrectly diagnosed him and improperly denied him incontinence supplies, therefore deliberately ignoring his serious medical need for such.

Plaintiff's medical records show that he was evaluated by a urologist in 2009, who found that he had a large capacity atonic bladder with no evidence of instability. An atonic bladder is one that is large, dilated, and non-emptying. The urologist suspected chronic urinary retention, but did not definitely explain the presentation at that time, recommending Plaintiff for catheterization and continued follow-ups. (PageID.1339-1340). Plaintiff then received catheters, diapers, medication, and related supplies. Plaintiff denied loss of bladder or bowel control on multiple occasions following the urologist exam. After Plaintiff was transferred to a new facility on March 25, 2010, he did not request catheters or incontinence supplies for 15 months. (PageID.2662). When Plaintiff requested catheters and adult diapers on June 20, 2011, he was evaluated by prison medical staff. The medical provider determined that catheters and adult diapers were not needed because there was no evidence of urinary or bowel retention or incontinence. (PageID.2735-2742). According to Plaintiff's medical records, he was continually evaluated for incontinence issues. However, no physical symptoms or other evidence was found to confirm his alleged condition. (PageID.2662-2663). In 2012, Plaintiff was evaluated by prison mental health staff, who noted a long history of sexually deviant behaviors that Plaintiff attempted to justify through his medical issues. Prison mental health staff suspected that Plaintiff's requests for adult diapers and catheters were for secondary gain and were an attempt to use them to satisfy his deviant

sexual fetishes. (PageID.2663). Plaintiff was transferred to another facility on February 21, 2012, where medical staff again found that he had no medical need for incontinence supplies. (PageID.2663).

Plaintiff was approved for incontinence garments on March 23, 2012, after presenting to nursing with a wet spot on his pants that he claimed was urine. (PageID.2836). Between March of 2012, and September 4, 2012, Plaintiff was regularly issued adult diapers. (PageID.2663-2664). In September of 2012, Plaintiff's diapers were confiscated to protect him from self-harm after he made a verbal statement that he may attempt to hang himself. (PageID.2928-2929). Plaintiff was then evaluated by mental health staff, who again determined that his use of adult diapers was most likely for a secondary gain and not for a serious medical need. Following the mental health evaluation, Plaintiff was monitored by medical staff, as well as custody staff. No signs of incontinence were ever observed on Plaintiff or in his cell. (PageID.2664).

On October 1, 2012, a mental health professional performed a comprehensive mental health review of Plaintiff's medical records going back to 2003. It was noted that throughout his incarceration, Plaintiff had made an excessive number of healthcare complaints, most of which appeared to be highly subjective. Additionally, Plaintiff's records show that his complaints were not supported by medical evidence upon examination. The mental health professional surmised that Plaintiff may be suffering from Munchausen Syndrome, a mental disorder in which a person feigns an illness to get attention typically given to a patient. Additionally, the mental health professional determined that Plaintiff was likely using the catheters and adult diapers as part of his extreme sexual deviance. Based on the psychological evaluation and an additional medical exam, Plaintiff's incontinence products were discontinued, as there was no medical need for them. (PageID.2942-

2955). Plaintiff was then transferred to Alger Correctional Facility, where two days after his arrival he requested incontinence supplies.

Defendant Westcomb saw Plaintiff on October 23, 2012, for a chronic care visit, at which time she evaluated Plaintiff's need for incontinence supplies. Based on her examination, as well as an extensive medical chart review, Defendant Westcomb made the determination that there was no medical need for Plaintiff to receive incontinence supplies. (PageID.2976-2980).

Plaintiff's claim against Defendant Kimsel concerns Defendant's alleged denial of catheters, lubricant, and incontinence garments. Defendant Kimsel first became involved with Plaintiff on September 5, 2013, when he referred Plaintiff to a physician for a chart review and medical evaluation. (PageID.3172-3173). The physician issued a Special Accommodation Notice for Plaintiff to receive, among other items, surgilube. According to the MDOC Bureau of Health Care Services Clean Intermittent Self-Catheterization: Guidelines for Medical Staff in effect at that time, lubricant required approval from the Regional Medical Officer. Defendant Kimsel made the physician aware of this and Plaintiff's supplies were put on hold pending case review. Defendant Kimsel had no face-to-face contact with Plaintiff. The only contact Defendant Kimsel had with Plaintiff was via kite responses on September 5, 18, 27, as well as October 3 and 7, 2013. (PageID.3172-3173, 3178, 3186, 3192-3193).

Both Defendants, as well as the Plaintiff move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that

there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff's complaint alleges that Defendants have violated Plaintiff's Eighth Amendment rights. The Supreme Court has held that deliberate indifference to a prisoner's serious illness or injury states a violation of the Eighth Amendment's "cruel and unusual punishments" clause because it constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, not every claim by an inmate of inadequate medical treatment rises to the level of an Eighth Amendment violation.

The standard by which such claims are judged involves two elements: the plaintiff's medical need must be "serious," and the plaintiff must show that the defendants were "deliberately indifferent" to that need. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment

violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1 (1992); *see also Wilson v. Seiter*, 501 U.S. 294 (1991).

"Deliberate indifference" requires an intentional effort to deny or ignore Plaintiff's need for medical care. *Estelle*, 429 U.S. at 105; *see also*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Harding v. Kuhlmann*, 588 F. Supp. 1315 (S.D. N.Y. 1984), *aff'd*, 762 F.2d 990 (2d Cir. 1985). Thus injury resulting from mere negligent conduct is insufficient to state an Eighth Amendment claim under Section 1983. *Estelle* 429 U.S. at 105; *see also Daniels v. Williams*, 474 U.S. 327, 333 (1986). Rather, the official's conduct "must demonstrate deliberateness tantamount to an intent to punish." *Hicks v. Frey*, 992 F.2d 1450 (6th Cir. 1993).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-155 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997).

In order to support his Eighth Amendment claim against Defendant Westcomb, Plaintiff must show that she acted with deliberate indifference towards him. In the opinion of the undersigned, Plaintiff fails to support his claim. Plaintiff's objective medical records show that Defendant Westcomb, as well as several other medical providers, repeatedly examined Plaintiff for his claims of incontinence and provided the necessary treatment. Plaintiff's only remaining claim against Defendant Westcomb is based on his appointment on October 23, 2012. During this appointment, Defendant Westcomb examined Plaintiff and throughly reviewed his chart, and determined that there was no medical need for Plaintiff to receive incontinence supplies. The fact

that Plaintiff disagrees with Defendant Westcomb's treatment plan does not constitute an Eighth Amendment violation. Plaintiff's disagreement with the objective medical evidence, and disagreement with Defendant Westcomb's medical judgment and treatment plan for him do not create an issue of fact.

Moreover, Plaintiff cannot establish a claim under state law. Plaintiff vaguely alleges that Defendant Wescomb failed to exercise a reasonable degree of care, raising a state negligence claim. Plaintiff's allegations fail as a matter of law; moreover, his claims do not comply with the state malpractice claim statutory requirements. *See* MCL § 600.2912b; § 600.2912d; MCL § 600.2169; *Scarsella v. Pollak*, 461 Mich. 547, 553 (2000). Additionally, undisputed objective medical evidence shows that Defendant Westcomb did not disregard Plaintiff's medical concerns, but rather provided treatment that met or exceeded the standard of care. In the opinion of the undersigned, Plaintiff's state law claim against Defendant Westcomb fails as a matter of law.

Defendant Kimsel moves for dismissal based upon qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006)); *cf. Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that the two-part test is no longer considered mandatory; thereby freeing district courts from rigidly,

and potentially wastefully, applying the two-part test in cases that could more efficiently be resolved by a modified application of that framework).

Defendant Kimsel argues that he did not have the requisite personal involvement to be liable under 42 U.S.C. § 1983.  Although Defendant Kimsel did have contact with Plaintiff, he did not have the authority as Health Unit Manager to approve or disapprove the incontinence supplies Plaintiff had asked for. Defendant Kimsel's only role in this lawsuit is as health care supervisor. Defendant Kimsel never treated Plaintiff, and his only contact with Plaintiff was via kites. In order to demonstrate liability under 42 U.S.C. § 1983, a prisoner must establish that a prison official acted under color of state law and that the official's actions offended rights secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137 (1989); *West v. Atkins*, 487 U.S. 42, 48 (1998). A claim under § 1983 requires a clear showing that the official was personally involved in the conduct that forms the basis of the complaint. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984). Additionally, liability under § 1983 must be based on active unconstitutional behavior and cannot be based on a "mere failure to act." *Salephour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).  Defendant Kimsel's conduct of responding to Plaintiff's kites, as well as forwarding his catheter order to the Regional Medical Officer, is not enough for him to be personally liable for damages.   In the opinion of the undersigned, Plaintiff failed to demonstrate that Defendant Kimsel was personally involved in this issue.

Moreover, Plaintiff cannot support an Eighth Amendment claim against Defendant Kimsel. Plaintiff has the burden of establishing that Defendant Kimsel acted with deliberate indifference to Plaintiff's serious medical needs. Plaintiff is merely dissatisfied with Defendant

Kimsel's referral of the supply order to the Regional Medical Officer. Defendant Kimsel merely followed administrative prison policy. Plaintiff fails to show that Defendant Kimsel acted with deliberate indifference towards his medical need by requesting medical supplies on behalf of Plaintiff. Moreover, Plaintiff's medical records show that Plaintiff was repeatedly seen and evaluated for all of his medical concerns, and all of Plaintiff's treatment plans were supported by objective medical evidence. In the opinion of the undersigned, Plaintiff therefore fails to support a valid Eighth Amendment claim against Defendant Kimsel.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motions for Summary Judgment. Accordingly, it is recommended that Defendants' Motions for Summary Judgment (ECF No. 147 and ECF No. 156) be granted dismissing this case. It is further recommended that Plaintiff's Motion for Summary Judgment (ECF No. 152 and ECF No. 154) be denied.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: June 20, 2016

    /s/ TIMOTHY P. GREELEY
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE