UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KERRY D. MILLER,

    Plaintiff,

v.

                                  Case No. 2:14-cv-45

                                  HON. ROBERT HOLMES BELL

AMY WESTCOMB et al.,

    Defendants.

                                    /

## **O P I N I O N**

On February 20, 2014, Plaintiff Kerry D. Miller filed a complaint in this Court pursuant to 42 U.S.C. § 1983. The remaining Defendants, Amy Westcomb and John Kimsel, have filed motions for summary judgment. (ECF Nos. 147, 156.) Plaintiff has filed cross-motions for summary judgment. (ECF Nos. 142, 154.) On June 20, 2016, United States Magistrate Judge Timothy P. Greeley issued a report and recommendation (R&R, ECF No. 182), recommending that Defendants' motions for summary judgment be granted, and that Plaintiff's motions for summary judgment be denied. The matter is before the Court on Plaintiff's objections to the R&R. (ECF No. 183.)

The Court makes a de novo determination of those portions of an R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to

enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). The Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. *Id.*

## I.

Plaintiff Kerry D. Miller is incarcerated at the Bellamy Creek Correctional Facility. In 2009, Plaintiff reported bladder issues and was examined by Randall S. Kuntzman, M.D. (ECF No. 149-9, PageID.3541.) Dr. Kuntzman noted that Plaintiff has "a very large capacity bladder with no evidence of instability and no evidence of detrusor contraction." (*Id.*) He planned to meet with Plaintiff in four months to reevaluate Plaintiff's condition, and noted that he "suspect[s] that [Plaintiff] will need intermittent catheterization for the remainder of his life." (*Id.*) Plaintiff's medical records indicate that as of January 2010, Plaintiff still required catheterization. (ECF No. 149-1, PageID.2675.) Plaintiff continued to see other doctors for his bladder issues. On June 10, 2010, Gail Burke, M.D., noted that Plaintiff "denies paresthesias or lack of bowel and bladder control." (*Id.* at PageID.2724.)

Upon his transfer to Bellamy Creek, Plaintiff did not request catheters or diapers for 16 months. (*Id.* at PageID.2735; *see also* PageID.2740 ("For the last 16 months he had not requested any of the supplies. He states he has been using toilet paper and a rubber band to help with the incontinence . . . . He didn't request the supplies because he states he kept getting into fights with the bunky.").) Plaintiff filed a kite on June 20, 2011, requesting these items. Sherri Gregurek, R.N., noted the fact that Plaintiff had not requested these items since arriving at Bellamy Creek, and that Plaintiff did not mention any such problems when he met

with her three days earlier. (*Id.*) Gregurek scheduled Plaintiff for an evaluation to determine whether incontinence garments were needed. (*Id.* at PageID.2745.) At this evaluation, Dennis A. Behler, P.A., noted that Plaintiff has "been managing without self cath for well over a year. He's instructed to continue with his urinary practices. There's high infection risk with self cath." (*Id.* at PageID.2746.) Plaintiff continued requesting incontinence supplies, but was continually denied because "the physicians treating him maintain he does not require the supplies that he is requesting." (*Id.* at PageID.2755.)

On September 27, 2011, Plaintiff was again scheduled for an evaluation after filing a kite stating that he was having full bowel movements in his pants 2-3 times per day. (*Id.* at PageID.2765.) On October 4, the doctor noted that Plaintiff "denies urinary frequency. He says that sometimes he experiences urinary hesitancy, but this has been going on for years. He is on 10 mg Cardura, which had been recommended by a urologist. On physical exam today there is no distension of the urinary bladder or any tenderness to palpation." (*Id.* at PageID.2772.) A urinalysis was ordered. It came back normal. (*Id.* at PageID.2776.)

Throughout 2012, Plaintiff continued to file kites due to his incontinence issues. On February 10, 2012, Ann M. Karp, R.N., stated: "There has never been any evidence of incontinence when he has been evaluated in health care, even though he reports having bowel movements in his pants about three times a day. Your request for diapers has been evaluated several times. There is no medical reason you need to wear diapers. You have a toilet in your cell. You can use it as frequently as you need to. Please follow the bladder training as you have been instructed." (ECF No. 149-2, PageID.2808.)

In February 2012, Plaintiff was transferred to Richard A. Handlon Correctional Facility (MTU). There, Dr. Roger Gerlach, M.D., noted that Plaintiff's "requests for incontinence supplies/self cath supplies not supported in EMR." (*Id.* at PageID.2826, .2828.) On March 23, 2012, Plaintiff showed Gerlach "a wet spot on his pants . . . that he indicates is urine." (*Id.* at PageID.2836.) Gerlach approved Plaintiff for incontinence garments, which Plaintiff continued to receive until September 2012. Plaintiff was not receiving self-catheterization supplies. In September, Plaintiff was evaluated with a moderate suicide risk level and, because he had threatened to hang himself, his management plan was rewritten to withhold underwear and incontinence products. (ECF No. 149-3, PageID.2932, .2933.) Maureen Mickalonis, M.A., evaluated Plaintiff and believed that Plaintiff was requesting the diapers "for secondary gain and possibly [they] are a fetish in the service of his extreme sexual deviance." (*Id.* at PageID.2935.) A mental health evaluation was conducted on October 1, 2012, which noted that the medical providers' physical findings "consistently do not support self report." (*Id.* at PageID.2953.) The examiner stated that since the restriction of Plaintiff's incontinence supplies in September 2012, "there has not been even one incontinence incident reported or observed." (*Id.* at PageID.2954.) The examiner recommended the discontinuation of all incontinence products. (*Id.* at PageID.2955.) Two days later, Gerlach "agree[d] with recommendation to d/o incontinence products as no real medical indication . . . ." (*Id.* at PageID.2957.)

On October 16, 2012, Plaintiff was transferred to the Alger Correctional Facility (LMF), where he again requested incontinence supplies. Plaintiff was evaluated by

Defendant Amy Westcomb on October 23, 2012. (ECF No. 149-4, PageID.2979.) Dr. Westcomb "performed a physical examination and reviewed [Plaintiff's] medical chart, including a urology consultation from May 2009 that suggested possible chronic urinary retention however, the urologist could not definitively explain the cause of [Plaintiff's] large bladder and urinary retention and did not formally diagnose him." (Westcomb Aff. ¶ 24, ECF No. 147-2, PageID.2666; *see also* ECF No. 149-4, PageID.2976-.2979.) Westcomb noted that Plaintiff had "no evidence of urinary or bladder incontinence today, h[is] clothing is clean and there is not odor of feces or urine." (*Id.* at PageID.2976.) After an examination, Westcomb decided to "not order incontinence garments at this time." (*Id.* at PageID.2978.)

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The fact that both parties have filed motions for summary judgment "'does not require the Court to rule that no fact issue exists.'" *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001) (quoting *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948)). "When parties file cross-motions for summary judgment, 'the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party

waives judicial consideration and determination whether genuine issues of material fact exist.'" *Id.* (quoting 10A Charles Alan Wright et al., Federal Practice and Procedure § 270 (3d ed. 1998)).

## III.

Plaintiff's remaining claims in this matter allege that Defendant Westcomb violated the Eighth Amendment and state law by denying Plaintiff incontinence supplies on October 23, 2012, and that Defendant Kimsel violated Plaintiff's Eighth Amendment rights by preventing Plaintiff from obtaining catheters, lubricant, and incontinence garments.

### A. Defendant Westcomb

#### 1. Eighth Amendment Violation

To prove an Eighth Amendment violation for deliberate indifference to a serious medical need, Plaintiff is required to satisfy both an "objective" and "subjective" prong. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005).

The objective component "requires the existence of a 'sufficiently serious' medical need." *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This is a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004). Alternatively, "where the plaintiff's 'deliberate indifference' claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *id.*, then the inmate "must place verifying

medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires Plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). While a prisoner need not show that "he was literally ignored . . . to prove an Eighth Amendment violation," he must demonstrate that "his serious medical needs were consciously disregarded." *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001).

The Sixth Circuit "distinguish[es] between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Under this standard, the Court agrees with the R&R's conclusion that Plaintiff has not shown that Defendant Westcomb acted with deliberate indifference toward any serious medical need that Plaintiff presented. The evidence indicates that Westcomb completed a thorough examination of Plaintiff on October 23, 2012. She reviewed his charts, and determined that he "has no evidence of urinary or bladder incontinence today, h[is] clothing is clean and there is not odor of feces or urine." (ECF No. 149-4, PageID.2976.) This

7

determination was consistent with that of other medical professionals in 2011 and 2012. Defendant Westcomb explained that, despite the 2009 consultation indicating that Plaintiff had bladder issues, at the time she examined him, Plaintiff "did not present with objective evidence of incontinence or urinary retention . . . . His presentation on October 23 was consistent with his most recent examinations by other professionals as well, including the recent mental health report and medical service provider's recent discontinuation of supplies at [Plaintiff's] prior facility." (Westcomb Aff. ¶ 24.) The evidence suggests that Plaintiff's alleged medical needs were taken seriously by Westcomb and other medical professionals. The Court will not second guess Westcomb's medical judgment that Plaintiff presented "no evidence of urinary or bladder incontinence" and, thus, did not require incontinence garments. *Westlake*, 537 F.2d at 860 n.5.

### 2. Negligence

Plaintiff also contends that Westcomb acted negligently in violation of state law while treating him. (Am. Compl. 12, ECF No. 17; Pl.'s Mot. Summ. J. 13, ECF No. 152.) Michigan courts distinguish between ordinary negligence claims and medical malpractice claims.

> A medical malpractice claim is distinguished by two defining characteristics. First, medical malpractice can occur only "'within the course of a professional relationship.'" Second, claims of medical malpractice necessarily "raise questions involving medical judgment." Claims of ordinary negligence, by contrast, "raise issues that are within the common knowledge and experience of the [fact-finder]." Therefore, a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises

>questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions.

*Lee v. Detroit Med. Ctr.*, 775 N.W.2d 326, 332-33 (Mich. Ct. App. 2009) (quoting *Bryant v. Oakpointe Villa Nursing Centre*, 684 N.W.2d 864, 871 (Mich. 2004)). In this case, Defendant Westcomb treated Plaintiff within the course of a professional relationship, and the determination of whether Plaintiff's medical records and physical examination demonstrated a need for incontinence garments is a medical judgment beyond the realm of common knowledge and experience. *See Adkins v. Annapolis Hosp.*, 323 N.W.2d 482, 485 (Mich. Ct. App. 1982) ("[M]edical malpractice . . . has been defined as the failure of a member of the medical profession, employed to treat a case professionally, to fulfill the duty to exercise that degree of skill, care and diligence exercised by members of the same profession, practicing in the same or similar locality, in light of the present state of medical science.").

As noted in *Lee*, there are "procedural and substantive requirements that govern medical malpractice actions." 775 N.W.2d at 333. For instance, the plaintiff in an action alleging medical malpractice must furnish an affidavit of merit signed by a health professional, which certifies that the health professional has "reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations in the notice." Mich. Comp. Laws § 600.2912d. This statute applies to inmates housed within the Michigan Department of Corrections. *See Grumbley v. Governor*, No. 311171, 2013 WL

1501026, at *2 (Mich. Ct. App. Apr. 11, 2013) ("[Inmate] failed to file the required affidavit of merit. Accordingly, [his] claim was properly dismissed."). Plaintiff's objections do not dispute the Magistrate Judge's determination that Plaintiff has failed to file such an affidavit, or that he has failed to comply with other procedural and substantive requirements for medical malpractice claims. Moreover, the Court agrees with the R&R that Plaintiff has otherwise failed to create an issue of fact that Defendant Westcomb is liable for medical malpractice. Accordingly, this claim will be dismissed.

**B. Defendant Kimsel**

Plaintiff also claims that Defendant John Kimsel, the Health Unit Manager (HUM) at LMF correctional facility, violated his Eighth Amendment rights. Defendant Kimsel did not become involved until October 4, 2013. (Miller Dep. 25, ECF No. 157-2.) Plaintiff states that he sent Kimsel five or six kites, and that Kimsel "is the one that stopped the doctor's order" to provide Plaintiff with catheters. (*Id.* at 18-19.) Plaintiff's grievance against HUM Kimsel stated that "HUM Kimsel overruled the doctor's diagnoses and discontinued the issuing of supplies based on what? The supplies need to be issued ASAP!" (Grievance LMF 13-10-1521-12e4, PageID.1137.) Defendant Kimsel has raised the defense of qualified immunity to this claim.

As the R&R noted, and Plaintiff has admitted, Defendant Kimsel did not have the ability to overrule or stop a doctor's order. (*See* Kimsel Aff. ¶ 1, ECF No. 157-3; Miller Dep. 17, ECF No. 157-2.) Kimsel's job requires him to oversee the daily operation of health services at LMF as a second-line administrative supervisor of a complex work area

10

coordinating and directing the work of subordinate, licensed, professional, Registered Nurses." (Kimsel Aff. ¶ 1, ECF No. 157-3.) He "had no conversations with [Plaintiff] . . . The extent of [their] contact was [Kimsel] answering kites" sent by Plaintiff on several occasions. (*Id.* ¶ 11.) Kimsel responded to those kites, and forwarded a catheter order to the Regional Medical Officer.

The Court agrees with the R&R's conclusion that Kimsel's act of referring the supply order to the Regional Medical Officer does not demonstrate deliberate indifference toward a serious medical need. Because Plaintiff has failed to show that Kimsel violated his constitutional rights, Kimsel is entitled to qualified immunity.

### IV.

For the reasons stated above, the Court will approve and adopt the R&R, and Plaintiff's objections will be overruled. A separate order and judgment will enter in accordance with this opinion.


Dated: <u>August 4, 2016</u>                          <u>/s/ Robert Holmes Bell</u>
                                                      ROBERT HOLMES BELL
                                                      UNITED STATES DISTRICT JUDGE